## Commonwealth v. Stegmaier Brewing Co., Appellant.

Argued May 26, 1932. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Dougless D. Storey,* with him *Alton W. Lick* and
*Hause, Evans & Baker,* for appellant.—Appellant is en-
titled to the manufacturing exemption: Com. v. Wark
Co., 301 Pa. 150; Com. v. Brewing Co., 145 Pa. 83.

The General Corporation Act and the Licensing Acts support appellant's interpretation: Ruppert v. Caffey, 251 U. S. 264; Com. v. Reyburg, 122 Pa. 299.

The Snyder-Armstrong Act has no effect on the tax liability.

Appellant was subjected to double taxation.

Appellant is not liable to pay to the Commonwealth, either directly or indirectly, a capital stock tax on the stock of other corporations which it owns and on which there has already been paid a capital stock tax: Com. v. R. R., 297 Pa. 308.

*Philip S. Moyer,* Deputy Attorney General, and *Wm. A. Schnader,* Attorney General, for appellee, were not heard.

OPINION BY MR. JUSTICE LINN, September 26, 1932:

This appeal presents two claims for capital stock exemption for the year 1927.

1. Appellant contends that part of its property is within the exemption allowed by statute to manufacturing corporations. The Act of June 1, 1889, P. L. 420, 72 P. S., section 1892, imposing capital stock tax, as amended May 4, 1927, P. L. 742, section 2, contains the following: "......provided further, that the provisions of this section shall not apply to the taxation of the capital stock of corporations......organized for...... manufacturing purposes, which is invested in and actually and exclusively employed in carrying on...... manufacturing within this State, excepting companies engaged in the brewing or distilling of spirits or malt liquors,......" "Where the taxpayer or his property is within the general language of the statute imposing the tax, all exempting provisions are to be strictly construed against the claim for exemption:" Callery's App., concurring opinion, 272 Pa. 272, 116 A. 222.

Appellant was incorporated in 1897, under the General Incorporation Act, as amended, for the purpose of

"manufacturing and brewing of malt liquors." *  It presented its petition for exemption of "$727,160.13 of its capital and assets during the twelve months ending December 31, 1927, invested in and actually and exclusively employed in carrying on a manufacturing business within the State."

The claim was denied on the ground that appellant was engaged in brewing malt liquors.  The learned court below said: "But in addition to this, we have under the stipulation of facts the admission that the appellant is engaged in the brewing of malt liquor containing alcohol by volume not exceeding 3.25% ; it is further stipulated that it takes another step in its process of manufacture and that is, de-alcoholizing so that not over one-half of one per centum of alcohol by volume remains in the finished product.  The fact is, however, that, during the process of manufacturing, the appellant brews malt liquor which is intoxicating.  It first makes what formerly was regarded as the finished product of the brewer, now intoxicating liquor, hence the necessity of a permit which is a recognition that at some stage of its manufacturing process alcoholic beer was to be brewed and then the process of de-alcoholizing it."

Appellant insists that it brings itself within the exemption by de-alcoholizing the malt liquor until it contains less than the maximum percentage of alcohol permitted in drink sold as beverage.  The statute withheld exemption from companies "engaged in the brewing .....of......malt liquors."  Appellant is engaged in

---

* In 1922 it amended its charter by specifying the following purpose: "The manufacture and brewing of malt liquor, cereal beverage and other nonintoxicating beverages, and as incident to said business, the conducting and maintaining of a warehouse for dry and cold storage, instead of manufacturing and brewing of malt liquors as not limited by its charter." While noting this amendment as a fact in the record, we must not be understood as considering that it was necessary to enable appellant to brew and sell the malt liquor which it designates as cereal beverage.

that industry.  It brews a malt liquor—beer—and, by partly removing the alcohol, brings the same malt liquor within statutory regulations permitting its sale.  Such brewing is allowed by the Act of March 27, 1923, P. L. 34, 47 P. S., section 1 et seq., and is further regulated by the Act of February 19, 1926, P. L. 16, 47 P. S., section 121 et seq., requiring the brewer first to obtain a permit from the alcohol permit board.  Appellant procured a permit and agreed to comply with "the rules and regulations promulgated [pursuant to the statute] by the ......board."  One of these rules, quoted in the Commonwealth's brief, is as follows:  "The phrase 'cereal beverage' shall mean and include all malt and fermented liquors, or any admixture thereof, from whatever source, or whatever processes produced, which contain or develop during or after manufacturing any alcohol by volume."  We all agree that appellant is not entitled to the exemption claimed.

2. Appellant's second claim is that part of its investment in shares of stock of other corporations, already taxed, was taxed again, contrary to the presumption against double taxation.  By stipulation the parties agreed that the total capital stock value was $1,050,000.  Appellant had invested $129,135 in shares of stock of other Pennsylvania corporations, on which a capital stock tax had been paid by those corporations at a valuation of $80,218.  The learned court below was of opinion that, in that amount, the investment was entitled to relief from taxation in this proceeding.  We agree with that conclusion.  Appellant is dissatisfied with that allowance and claims relief in the amount invested, instead of in the amount on which the Commonwealth had received tax.  As the capital stock value represented by appellant's investment in the excess over the $80,218 had not been taxed, there is no double taxation:  Com. v. Shenango Furnace Co., 268 Pa. 283, 110 A. 721.  But on this branch of the case, appellant presents another contention that we must sustain under Com. v. P. R. R. Co.,

297 Pa. 308. Appellant has in fact been relieved of tax on only $70,439 in consequence of error in the method of eliminating the already taxed asset from the agreed capital stock valuation. The method is quoted in the margin from the opinion* of the learned court below and results in double taxation of $9,779. In Com. v. P. R. R.; supra, it was said that in a proceeding of this character such "shares of stock are not to have charged against them any proportion of the indebtedness" of the corporation, that is, to the extent that they have been taxed, they must be kept out of the capital stock valuation, or, if included for any purpose of accounting, must be eliminated in arriving at the valuation to which the five-mill rate is applied.

At the argument the court was informed by counsel that this contention for exemption was presented in precisely the same circumstances as it was presented at length in Com. v. Eastern Securities Co. (the preceding

---

* "The settlement sheet discloses that the total assets are $1,195,661.52 which includes the said nontaxable assets of $80,218. Applying the method of elimination ...... we find that each dollar of the total assets went into the capital stock value on a percentage basis of $.8781. The nontaxable assets therefore went into the total capital stock value at $80,218 times $.8781 or $70,439.42; deducting the nontaxable assets from the total assets we have as taxable assets $1,115,443.52, which we shall hereafter treat as the total assets, and deducting the capital stock value of the $80,218 from the total capital stock value, $1,050,000, ($1,050,000 —$70,439) or $979,561, the taxable capital stock value, and we have thus entirely eliminated from taxation in this matter the nontaxable assets and they are not charged with any indebtedness of the appellant. We can now apply the formula......

$$\frac{\text{Taxable assets}}{\text{Total assets}} \times \text{capital stock value} = \text{taxable value of capital}$$

stock, which, reduced to figures in this case, is:

$$\frac{\$1,115,443}{\$1,115,443} \times \$979,561 = \$979,561, \text{ taxable value of capital stock,}$$

which taxed at $.005 equals $4,897.80."

case) argued immediately before the argument of this appeal, and that counsel therefore did not wish to re-argue the point, preferring to rely on what had been said by counsel in that appeal. We find, however, a radical difference between the two records. In the Eastern Securities Co.'s Case a witness was called whose testimony, with other evidence in the record, supported the finding of the capital stock valuation to which the tax rate was applied. In this record, there is no such oral evidence, with the result that there is no support for the finding of fact. We cannot approve and give effect to an agreement of the parties fixing the total capital stock valuation at $1,050,000 so long as they disagree about the value of an element contained in that sum which must be eliminated to find the ultimate fact in issue. Appellant contends for the deduction of $80,213, appellee for $70,439. In the absence of stipulation of sufficient facts, evidence is required. We must therefore remit the record with leave to supplement it by additional stipulation of facts or by the production of testimony by witnesses.

Judgment reversed and record remitted for further proceedings.