## Hopewell Township v. Schmidt

*Charles D. Stone,* for plaintiff.

*Theodore A. Tenor,* for defendant.

McCREARY, P. J., March 20, 1959.—The following case stated in assumpsit is before the court for determination, the same being agreed upon by the parties without reserving the right to appeal from the judgment entered by the court:

"1. Plaintiff is the Township of Hopewell, a Municipal Corporation, in the County of Beaver, and Commonwealth of Pennsylvania.

"2. Defendant is Robert Schmidt, a resident and taxpayer of the Township of Hopewell, who operates Eureka Lake, which is a regulated fee-fishing lake located in the Township of Hopewell, County of Beaver and Commonwealth of Pennsylvania, and trades under the name of Eureka Lake.

"3. The defendant is duly licensed under the Fish Law of 1925, as amended, and pays an annual license fee to the Commonwealth of Twenty-five ($25) Dollars for the privilege of operating a fee lake.

"4. The Township of Hopewell by its Ordinance No. 212, a copy of which is attached, levies a tax for general Township purposes on admissions to amusements within the Township of Hopewell under the authority

of the Tax Anything Law, 1947, P. L. 1145, as amended.

"5. The said tax imposed is at the rate of one (1) cent on every ten (10) cents of admission to any amusement within the Township of Hopewell, and further provides that where no fixed admission is charged, the tax shall be based on the gross admissions collected. The said Ordinance was enacted May 29, 1954, effective June 12, 1954.

"6. Defendant, under protest, was licensed under said Ordinance shortly after enactment, and has paid ten (10) per cent of its admission receipts to the Township until May, 1958.

"7. Defendant charges $1.50 a day to users of the lake (licensed fishermen) and has added fifteen (15) cents per admissions to its charge, to cover the Amusement Tax. (Charge to ladies and children under 12 is $1.00 and 10 cents is added to charge.)

"8. In the month of May, 1958, defendant collected the sum of $983.50 in admissions, and holds the additional ten (10) per cent collected from its customers in escrow, pending decision in this action.

"9. Under the Fish Law of 1925, as amended, [Fish Law of May 2, 1925, P. L. 448] each operator of a fee-fishing lake must pay an annual license fee of Twenty-five ($25) for the privilege of operating such a lake. (See 30 P. S. 59.) This same Act establishes a fund denominated a fish-license fund and provides that all license fees collected under the Act shall be paid into this fund and used solely for the payment of all expenses incurred by the Pennsylvania Fishing Commission in carrying out its functions under the Act. The Act provides also for the collection of license fees from each resident and nonresident fisherman, which fees are also paid into the fish fund.

"10. If the Court finds that the annual license fee paid by defendant is a true license fee so as to make

the defendant exempt under the Act of June 25, 1947, P. L. 1145, the Court shall enter judgment for the defendant for costs; otherwise, it shall enter judgment for the plaintiff for $98.35, plus costs."

It would have been difficult for the court to properly determine the matter under the agreed statement of facts without further information as to the use to which the $25 license fee charged by the Commonwealth is put. Certainly if it were a mere flat nominal charge made annually to cover the expense of the paper work involved in printing the license and mailing it to the applicant, it would not be a true license fee and would, therefore, not bar the Township of Hopewell from levying and collecting the amusement tax referred to in the case stated. But if the fee charged by the Commonwealth was intended to cover the cost of inspection and proper regulation, or to help maintain the Fish Fund, established for land purchases, recreation, conservation, etc., such State license fee of $25 would be a true license fee and would prevent the Township of Hopewell from levying an amusement tax on admissions to the fee-fishing lakes in its district.

Fortunately, the parties have agreed upon the fact that the $25 annual State license fee for fee-fishing lakes "is more than is needed for mere clerical work and goes into the Fish Fund and is therefore used for land purchases, recreation programs, etc." An exact copy of a letter written to the solicitor of the Township of Hopewell describing the destination of the $25 State license fee for fee-fishing lakes is attached to this opinion and is agreed upon by the parties as a part of the case stated.

For cases in Pennsylvania where our appellate courts have distinguished between true license fees imposed by the Commonwealth and those fees that

cannot be regarded as true license fees, see the following:

Philadelphia Coca-Cola Bottling Company v. Philadelphia, 382 Pa. 299.; Honorbilt Products, Inc. v. Philadelphia, 380 Pa. 630; National Biscuit Co. v. Philadelphia, 374 Pa. 604; Tax Review Board v. C. J. Devine & Co., 184 Pa. Superior Ct. 297; Freeman v. City of Philadelphia, 178 Pa. Superior Ct. 290; Gunn Pontiac, Inc. v. Pittsburgh, 174 Pa. Superior Ct. 75. See also, Hay v. City of Johnstown, 85 D. & C. 70.

In view of the reasoning of our appellate courts on the subject of licenses required by the Commonwealth, we reach the conclusion on the basis of the agreed facts in this case that the $25 annual license fee charged to the above-named defendant, owner of a fee-fishing lake, is a true license fee and that, therefore, the Township of Hopewell has no authority to levy an amusement tax for admission to the lake in question to fish.

Entertaining these views, we enter the following

*Order*

Now, March 20, 1959, judgment is entered for the defendant for costs.